OPINION
{¶ 1} Defendant-appellant, Anthony R. Vincenzo, III ("Vincenzo"), appeals the June 23, 2003 judgment entry of the Ashtabula County Court of Common Pleas sentencing Vincenzo to serve, consecutively, a ten-year prison term for aggravated burglary, a first degree felony, and an eighteen-month prison term, imposed in a separate case, trial court no. 2001-CR-1156, for failure to appear, a fourth degree felony. For the following reasons, we reverse Vincenzo's sentence and remand this cause for re-sentencing.
 {¶ 2} On November 30, 2000, the Ashtabula County Sheriff's Department was summoned to the home of the victim, an eighty-five-year-old female, who resided on Austinburg Road in Ashtabula, Ohio. The victim stated that she had fallen asleep around 11:00 p.m. while watching television in her bedroom. She woke up when she heard a noise. The noise emanated from the exterior door which led into the kitchen. She approached the door to investigate and heard someone outside. She asked, "Who's there?" At that time, she was struck on the head with a hard object which "knocked her out." She awoke later on her kitchen floor with a large lump on the back of her head. She then called her daughter-in-law and told her what happened. Her daughter-in-law subsequently contacted emergency services.
 {¶ 3} An investigation of the scene revealed two sets of footprints in the snow coming from the north to the side of the home. There was also evidence of damage to the door jam, which was split apart, indicating a forced entry. Inside the home, the deputies found that the victim's bedroom had been ransacked, including dresser drawers lying on the floor with their contents removed, as well as the mattress lifted off the box springs and lying against the wall. The bedroom was the only room which appeared to be ransacked.
 {¶ 4} The victim's daughter arrived at the scene and spoke with the officers. She indicated that she suspected Vincenzo was involved. Vincenzo's father was a family friend and Vincenzo had called the victim a few days earlier asking for money. She indicated that Vincenzo was aware that the victim lived alone.
 {¶ 5} Ashtabula County Detectives Hubbard and Van Robison commenced an investigation, looking for Vincenzo. After learning from his family where he was residing, the officers approached the residence and were told to check another home at which Vincenzo was staying. They were also informed that Vincenzo had been associating with DJ Green ("Green") and that Green might have also been involved. After failing to locate Vincenzo, the officers went to Green's residence. Green's father indicated that he had not seen Green or Vincenzo and that Green was "on the run" from his probation officer due to an outstanding warrant for his arrest. He confirmed that Green and Vincenzo had been "hanging out" together.
 {¶ 6} On February 8, 2001, Vincenzo, Green, and two other suspects, Brandon Nelson ("Nelson") and Eric Tressler ("Tressler") were charged on a seven-count indictment. Vincenzo was charged on two of the seven counts, including Count Six, complicity to aggravated burglary, a felony of the first degree; and Count Seven, complicity to theft, a felony of the fifth degree. Each suspect provided a separate statement which all varied factually but implicated all parties.
 {¶ 7} Vincenzo filed a motion to sever his case from his co-defendants which the trial court granted. A jury trial was set to commence June 13, 2001. Vincenzo failed to appear, and the trial court issued a capias for his arrest. Vincenzo had absconded from the jurisdiction and was subsequently found and arrested on March 6, 2003. A jury trial was set to commence on May 5, 2003. Vincenzo withdrew his former plea and entered a plea of guilty to the count of complicity to aggravated burglary. The second count was dismissed by the state.
 {¶ 8} On June 23, 2003, the trial court sentenced Vincenzo to ten years imprisonment on the complicity to aggravated burglary, to be served consecutively with the eighteen-month sentence imposed in the separate trial court case for failure to appear. Vincenzo filed the instant appeal, presenting a single assignment of error:
 {¶ 9} "The trial court erred in failing to sentence defendant-appellant, Anthony R. Vincenzo, to a minimum sentence as a first time offender, and, instead, sentencing Mr. Vincenzo to a maximum sentence to be served consecutive with an additional charge of failure to appear."
 {¶ 10} Pursuant to R.C. 2953.08(G)(2), an appellate court reviews a felony sentence under a clear and convincing evidence standard of review. An appellate court may not disturb a sentence unless the court "clearly and convincingly finds" that "the record does not support the sentencing court's findings," or that "the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a) and (b). Clear and convincing evidence is that evidence "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 11} When sentencing a felony offender, the trial court must impose a sentence that is reasonably calculated to achieve the overriding purposes of sentencing, which are to protect the public from future crimes by the offender and others and to punish the offender. R.C. 2929.11(A).
 {¶ 12} In order to impose consecutive sentences for multiple offenses, the trial court must consider three factors enumerated in R.C.2929.14(E)(4): (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and the danger the offender poses to the public; and (3) that one of the factors within R.C. 2929.14(E)(4)(a) through (c) exists. State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, at ¶ 13.
 {¶ 13} R.C. 2929.14(E)(4)(a) through (c) include that the offender committed one or more of the multiple offenses while the offender was under a sanction; at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused was so great or unusual that no single prison term adequately reflects the seriousness of the offender's conduct or that the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
 {¶ 14} The Supreme Court of Ohio has held that, in adhering to these statutory guidelines, a trial court must "make a finding that gives its reasons" on the record for the imposition of sentence. State v.Edmonson, 86 Ohio St.3d 324, 328-329, 1999-Ohio-110. Moreover, in Comer,
the court required that sentencing courts make their "findings," and reasons in support thereof, on the record "at the sentencing hearing."99 Ohio St.3d 463, paragraph one of the syllabus.
 {¶ 15} In the instant case, the trial court conducted a joint sentencing hearing with Vincenzo and a co-defendant. At the hearing, the trial court took statements from the state, defense counsel for both offenders, as well as the offenders themselves. Subsequent to these statements, the trial court proceeded to its sentencing, addressing both offenders simultaneously:
 {¶ 16} "I don't know that I need to reiterate everything that the prosecuting attorney has said but I guess by statute now I'm required to make some statements for the record that in this case I feel are so obvious that they probably don't need to be stated.
 {¶ 17} "It is hard for this Court to imagine a worse form of this offense. Any house burglary certainly is a very serious offense and, in and of itself, as (sic) among what I believe is one of the worst crimes that can be committed. Assault and offenses of violence, of course, are more serious perhaps than a burglary but here we have everything.
 {¶ 18} "You break into someone's home at night when they're there. You confront this person, serious physical harm is inflicted upon this person and it's no excuse to say that I'm not the person that actually inflicted the harm. When you go down that road and you decide that you're going to be a co-conspirator with someone in the commission of a crime, then you are every bit as responsible as they are for everything that happens.
 {¶ 19} "* * *
 {¶ 20} "You know, when people in this community can't feel safe because young persons are going to get drunk or high and go out and commit serious and violent crimes, that is all the more, in my mind, an aggravating factor and worst form of the offense.
 {¶ 21} "So, I agree that in order not to demean the seriousness of your conduct in this case, and in order to impose a sentence that is commensurate with its affect on the victim in this case that for each of you on the first degree felony charge, Mr. Green in the Aggravated Burglary, and Mr. Vincenzo in the Complicity to Aggravated Burglary, that you will be sentenced to the Lorain Correctional Institute at Grafton, Ohio, to serve a sentence of ten years imprisonment."
 {¶ 22} The court then addressed both offenders regarding the failure to appear charges:
 {¶ 23} "Now, likewise, with the failure to appear, again, this is not uncommon for us to have these offenses where someone is on a personal bond and then they skip out but, if there's a way to say that one form of failure to appear is a worse form than another, I agree with the prosecuting attorney.
 {¶ 24} "This is the worst form of the offense. These were very serious offenses and the Court had made a determination that perhaps you could, at least, be trusted to stay here and to accept the consequences and, of course, not only did you both abscond but you managed to remain at large for like 20 months, left the State and I don't think you would have ever been seen again if you hadn't been located."
 {¶ 25} The court then imposed the maximum, consecutive sentences based upon the foregoing stated reasons. Since the evolution of theEdmonson/Comer line of cases, this court has consistently held that a verbatim recitation of the statutory language is not required by the trial court when it imposes sentence. State v. Grissom, 11th Dist. No. 2001-L-107, 2002-Ohio-5154, at ¶ 21. This court has also maintained that there must be adherence to the sentencing guidelines and the rationale espoused in Comer that the defendant must be informed of the reasons supporting the sentence imposed at the sentencing hearing. See R.C.2929.19(B)(2)(c).
 {¶ 26} In the instant case, the trial court, in addressing both defendants, did not specifically address either one in regards to their respective offenses. In addition, the court failed to provide reasons in support of its sentence. The generalized statements regarding elements of the crime for which they were charged will not suffice in determining that the offender should serve the maximum term authorized. Likewise, broad statements about the offense itself being the "worst crime" does not address the issue of whether that particular offender committed the worst form of that particular offense.
 {¶ 27} For the foregoing reasons, the trial court erred in sentencing Vincenzo, as it failed to adhere to the statutory sentencing guidelines and the Edmonson/Comer rationale.
 {¶ 28} Vincenzo's assignment of error is with merit.
 {¶ 29} The sentencing ruling of the Ashtabula County Court of Common Pleas is reversed and the matter is remanded for resentencing.
Rice, J., concurs, O'Neill, J., concurs with a Concurring Opinion.